UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

**LESSIE GLOVER**, individually and
on behalf of all others similarly situated,

       *Plaintiff*,

           vs.

**LIBERTY MUTUAL INSURANCE COMPANY,** a
Massachusetts Corporation,

       *Defendant*.

_____/

**CLASS ACTION**

## CLASS ACTION COMPLAINT FOR DAMAGES

Plaintiff Lessie Glover ("Plainitff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Liberty Mutual Insurance Company, ("Liberty Mutual" or "Defendant"), and in support states:

## NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiff, the named insured under an automobile policy issued for private passenger auto physical damage (the "Insurance Policy"),[1] including comprehensive and collision coverage, which requires payment of "Actual Cash Value" or "ACV." The ACV of a vehicle equates to the full cost to replace the vehicle and such cost includes any mandatory state and local costs and fees (Full Total Loss Payments or "FTLP") required to replace the vehicle.

_____

[1] Plaintiff's Insurance Policy is attached hereto as Exhibit A.

2.      Defendant is a private passenger auto insurance carrier operating in Florida. One of the coverages Defendant offers is comprehensive and collision coverage. Upon information and belief, Defendant systematically underpaid not just Plaintiff but thousands of other putative class members ("Class Members") amounts Defendant owed its insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage.

3.      This lawsuit is brought by the Plaintiff, individually and on behalf of all other similarly situated insureds, who suffered damages due to Defendant's practice of refusing to pay full ACV payments to first-party total loss insureds on physical damage policies containing comprehensive and collision coverages. Specifically, as a matter of policy, Defendant fails to include state and local title transfer and vehicle registration fees (FTLP) in its calculation of ACV when paying full total loss payment to its insureds.

4.      Plaintiff brings a claim for breach of contract based on Defendant's practice of failing to include title and tag transfer fees notwithstanding its contractual obligation to do so.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiff is a member of the putative classes which consist of at least 100 members and Plaintiff and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

6.      Venue is proper in this Court because a substantial portion of the acts and course of conduct give rise to the claims alleged occurred within the district and Defendant is subject to personal jurisdiction in this district.

2

## THE PARTIES

7.      At all times material hereto, Plaintiff was a citizen of the State of Florida and domiciled in Miami-Dade County, FL

8.      At all times material hereto, Defendant is and was a corporation located in the State of Massachusetts and authorized to transact insurance in the State of Florida and conducting a substantial part of its business in Miami-Dade County, Florida. Defendant's principal place of business and headquarters are both located in the State of Massachusetts.

## FACTUAL ALLEGATIONS

9.      In the Insurance Policy, Defendant's standardized policy language promises, upon the occurrence of a total loss to an insured vehicle, to provide payment of the ACV of the insured vehicle to the insured.

10.     Defendant's standardized policy language as to coverage for ACV of total loss vehicles is present in every auto policy issued by Defendant in Florida during the relevant time period.

11.     Under the policy and applicable state law, ACV includes an obligation to pay state and local fees for total loss vehicle comprehensive and collision coverage (previously defined herein as FTLP). Such fees include title transfer fees and tag transfer fees, each of which are mandatory fees imposed by the State of Florida.

12.     At all times material hereto, Plaintiff owned a 2010 Dodge Journey, VIN # 3D4PG5FV9AT265906 (the "Insured Vehicle").

13.     At all times material hereto, the Insured Vehicle was insured under the Insurance Policy issued by Defendant.

14.     On or about August 24, 2016, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendant, claim number PD000-034261080-04 (the "Claim").

15.     Following the filing of the Claim, a third-party vendor CCC Information Services, Inc. ("CCC") determined that the Insured Vehicle had a total valuation of $9,096.04. *See* **Exhibit B** at 1 (Market Valuation Report).

16.     No amount for title transfer fee or tag transfer fee was included in the amount listed in the CCC Market Valuation Report. *See Id* at 1. Instead the Report noted that the Total Value of $9,096.04 may not reflect the settlement amount because items such as "license and fees" were not taken into account in determining value, and may need to be taken into account prior to final determination of the settlement amount. *See Id* at 1.

17.     Defendant then determined the total value amount to be $9,180.00, and subtracted the deductible of $1,500.00 for a final payment of $8,284.59[2] to Plaintiff. *See* **Exhibit C** (Settlement Breakdown).

18.     Defendant's payment of $8,284.59 did not include amounts for title transfer or tag transfer fees (previously defined herein as FTLP).

19.     Title transfer fees and tag transfer fees (FTLP) are mandatory applicable fees that must be paid to replace any vehicle in the State of Florida.

20.     Upon information and belief, Defendant, pursuant to a standard and uniform business practice, never pays insureds FTLP after a total-loss to an insured vehicle, notwithstanding its contractual obligation to do so.

---

[2] Of this final payment, a payment of $7,258.43 was designated for the lienholder on the Insured Vehicle.

21.     Florida law requires that all vehicles be properly titled and registered in order to be legally driven on Florida roadways. The fee to transfer title to a vehicle is, at minimum, $75.25.

22.     Florida law requires that all vehicles have a proper license plate (or tag) in order to be legally driven on Florida roadways. The fee to transfer license plate or tag is no less than $4.50.

23.     Defendant breached its Insurance Policy with Plaintiff by failing to pay any amount for title transfer fees and tag transfer fees when it paid Plaintiff what it purported to be the ACV associated with the total loss of the Insured Vehicle.

24.     Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that their insurance policy was in effect and operational at the time of the accident.

## THE POLICY

25.     Pursuant to the Insurance Policy, under the section entitled "Coverage for Damage to Your Auto" the Defendant "will pay for direct and accidental loss to 'your covered auto' or any 'non-owned auto,' including their equipment, minus any applicable deductible shown in the Declarations." *See* **Exhibit A** at 7.

26.     The definition of "your covered auto" includes "any vehicle shown in the Declarations." *Id.* at 1.

27.     Under a provision entitled "Limit of Liability," Defendant states, in relevant part, that the "limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property;
2. Amount necessary to repair or replace the property with other property of like kind and quality."

*Id.* at 9.

28.     ACV is not defined in the Insurance Policy.

29.     The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased.

30.     In turn, the Insurance Policy does not exclude: (1) vehicle title and tag fees from ACV; or (2) any provision deferring or conditioning payment of vehicle title and registration fees for any purpose whatsoever.

31.     According to Defendant's policy, insureds are owed the same amount – actual cash value of the insured vehicle – whether or not they replace the vehicle at all. Insureds are owed the same amount – actual cash value – whether or not they paid (or how much they paid) for the total-loss vehicle. Instead, in exchange for the premiums paid by the insureds, Defendant promises to pay a predictable amount – the actual cash value of the insured vehicle, including tag and transfer fees – irrespective of payments related to either the total-loss vehicle or the replacement vehicle (if any).

## PAYMENT OF SALES TAX AND MANDATORY FEES

32.     Controlling case law from the Florida Supreme Court, Florida's appellate courts, the 11th Circuit Court of Appeals, and Florida's federal district courts hold that the term "actual cash value," when undefined in an Insurance Policy, should be defined as the repair or replacement cost minus depreciation – a definition which would include sales tax and title and transfer tag fees necessarily incurred upon replacement of the insured vehicle. See e.g., Trinidad v. Florida Peninsula Ins. Co., 121 So.3d 433, 438 (Fla. 2013) ("[a]ctual cash value is generally defined as 'fair market value' or '[r]eplacement cost minus normal depreciation,' where depreciation is defined as a 'decline in an asset's value because of use, wear, obsolescence, or age.'") (quoting Black's Law Dictionary 506, 1690) (9th Ed. 2009); Goff v. State Farm Florida Ins. Co., 999 So 2d 684, 689 (Fla. 2d DCA 2008) (undefined ACV is calculated as full replacement cost minus depreciation); Mills v Foremost Ins. Co., 511 F.3d

1300, 1306 (11th Cir. 2008) (holding that fees such as sales tax, tag and title transfers fees "should be included in an ACV payment if it is 'reasonably likely' that the insured would incur" such cost upon replacement) (quoting Ghoman v. New Hampshire Ins. Co., 159 F. Supp.2d 928, 934 (N.D. Tex. 2001)); Roth v. Geico General Ins. Co., Case No. 16-62942-CIV-Dimitrouleas (S.D. Fla. June 14, 2018) D.E. 247 at 9 ("[T]he court concludes that [sales tax and title transfer fees] are components of actual cash value under the Policy and are therefore due to be paid to the insured under the Policy, regardless of whether the vehicle is owned, financed, or leased.") (footnote omitted); Bastian v. United Services Auto. Ass'n, 150 F. Supp. 3d 1284, 1290 (M.D. Fla. 2015) (agreeing with the 11th Circuit's "easily reached conclusion [in Mills] that state and local taxes are part of the cost of replacing an item" and thus part of the ACV).

33.      In interpreting insurance policies, Florida courts begin with the plain language of the policy as bargained for by the parties. See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co., 832 F.3d 1318, 1322 (11th Cir. 2016). Policy terms are given their plain and ordinary meaning and should be read in light of the skill and experience of ordinary people. Id. But, "if the relevant policy language is susceptible to more than one interpretation, one providing coverage and another limiting coverage, the Insurance Policy is considered ambiguous." See Auto Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). Courts should interpret policy ambiguities "liberally in favor of the insurer and strictly against the insured who prepared the policy." See Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So. 2d 467, 470 (Fla. 1993). Moreover, Florida law is equally well-settled that coverage clauses are "construed in the broadest possible manner" in order to effect "the greatest extent of coverage." See e.g., Hudson v. Prudential Prop. & Cas. Ins. Co., 450 So.2d 565 (Fla. 2nd DCA 1984) (coverage must be construed broadly and exclusions narrowly).

34.     Title transfer fees and tag transfer fees are examples of elements constituting the FTLP owed to insureds in the event of a total-loss.

35.     By operation of law and in the view of a reasonable insured, Defendant's policy promises to provide costs to be incurred upon replacement of the vehicle.

36.     Nevertheless, Defendant declines to include all such fees  and costs in making ACV payment to total-loss insureds – specifically tag and title transfer fee amounts – thereby breaching its contracts with insureds.

## CLASS ALLEGATIONS

37.     Plaintiff brings this action seeking representation of a class pursuant to Fed. R. Civ. P. 23.

38.     Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by Defendant's failure to make the FTLP upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policies.

39.     Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is Plaintiff subject to any unique defenses.

40.     Plaintiff's claims raise questions of law and fact common to all members of the class, within the meaning of FRCP 23(a)(2), and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3). Said common questions include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiff and the class members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant has breached its insurance contracts with the Plaintiff and the class members by failing to make the FTLP upon the total loss of an insured vehicle.

41.     Plaintiff's claims are typical of the claims of all other members of the class because all such claims arise from the allegedly improper failure by Defendant to make a FTLP upon the total loss of insured vehicles.

42.     Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class.

43.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

44.     Class action is necessary, pursuant to Fed. R. Civ. P. 23(b)(1)(a), because the prosecution of separate actions by or against individual Class Members would create the risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant.

45.     Class treatment is also necessary, pursuant to Fed. R. Civ. P. 23(b)(1)(b), because the prosecution of separate actions by or against individual Class Members would create a risk of adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications, or would substantially impair or impede their ability to protect their interests.

46.     Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions

9

is questionable and the expense and burden of individual litigation makes it impracticable for Class

Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that

would be encountered in the management of this case that would preclude its maintenance as a class

action.

47.     Any argument that class treatment is not viable or productive in the present action is

undercut by the fact that the Middle District very recently treated as a class action a case that is

substantially identical in fact and in law to the present action. See Bastian v. United Servs. Auto. Ass'n,

150 F. Supp. 3d 1284 (M.D. Fla. December 10, 2015). Bastian is in the process of being successfully

settled as a class, and stands as incontrovertible evidence demonstrating the efficacy and viability of

class treatment in the present action. Similarly, Roth v. Geico General Insurance Co., Case No. 16-

62942-CIV-Dimitrouleas (S.D. Fla. June 14, 2018), is a substantially similar case recently certified as

a class action with judgment entered in favor of the class.

48.     Plaintiff brings this action as class representative, individually and on behalf of all

other persons or entities similarly situated, more specifically defined as follows:

> All insureds, under any Florida policy issued by Liberty
> Mutual  Insurance Company with the same operative policy
> language covering a vehicle with private-passenger auto
> physical damage coverage for comprehensive or collision
> loss where such vehicle was declared a total loss, who made
> a first-party claim for total loss, and whose claim was
> adjusted as a total loss, within the five year time period prior
> to the date on which this lawsuit was filed until the date of
> any certification order.

49.     The issues related to Plaintiff's claims do not vary from the issues relating to the claims

of the other members of the classes such that a class action provides a more efficient vehicle to resolve

this claim than through a myriad of separate lawsuits.

50.     Certification of the above classes is also supported by the following considerations:

a. The relatively small amount of damages that members of the classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;

b. Counsel in this class action is not aware of any previously filed litigation against Defendant in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and

c. No difficulties would be encountered in the management of Plaintiff's claim on a class action basis, because the classes are readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

51.     Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because Defendant is one of the largest motor vehicle insurers in the State of Florida and writes hundreds of millions of dollars of private-passenger physical damage coverage premiums, the classes of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity as to both classes is established.

52.     Fed. R. Civ. P. 23(a)(2)'s commonality requirement for the Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. Defendant and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include, but are not limited to the following: (a) whether under Defendant's standardized policy language, Plaintiff and Class Members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant breached its insurance contracts with Plaintiff and the Class Members by failing to make FTLP upon the total loss of an insured vehicle.

53.     Fed. R. Civ. P. 23(a)(3)'s typicality requirement for the Class Members is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendant's uniform misconduct. Further, Plaintiff and Class Members' legal claims arise from the same core practices, namely, the failure to make FTLP, including tag/title transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members. Plaintiff suffered the same harm as all the other Class Members.

54.     Plaintiff's claims are maintainable on behalf of the Class Members pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate claims or defenses by or against individual Class Members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the Class; and (B) adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other Class Members who are not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

55.     The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Class Members. Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

56.     Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

57.     Fed. R. Civ. P. 23(b)(3)'s requirements are met for all reasons already stated herein.

58.     Specifically, the previously articulated common issues of fact and law predominate over

any question solely affecting individual Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

59.     Defendants' breach of Policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of Policy terms. Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages to the Class in the future.

## COUNT I
## CLAIM FOR BREACH OF CONTRACT

60.     Paragraphs 1-59 are hereby incorporated by reference.

61.     This count is brought by Plaintiff individually and on behalf of the Class Members.

62.     Plaintiff was a party to a contract, the Insurance Policy, with Defendant as described herein. *See* **Exhibit A.** All Class Members were parties to an insurance contract with Defendant containing materially identical terms.

63.     The interpretation of Plaintiff's and all Class Members' insurance policies is governed by Florida law.

64.     Plaintiff and all Class Members made a claim determined by Defendant to be a first-party total loss under the insurance policy and determined by Defendant to be a covered claim.

65.     Defendant, by paying the total loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their duties and

conditions under their respective insurance policies for each to be paid on his or her total loss.

66.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class Member were owed the ACV of the vehicle.

67.     Defendant refused to make a FTLP (including mandatory fees) and thus failed to pay ACV owed under the Insurance Policy to Plaintiff and every Class Member.

68.     Defendant's failure to provide the promised coverage constitutes a material breach of contract with Plaintiff and every Class Member.

69.     As a result of said breaches, Plaintiff and the class members are entitled to sums representing the benefits owed for the full ACV payment, including title transfer fees, and tag transfer fees, as well as costs, prejudgment and post judgment interest, injunctive relief and other relief as is appropriate.

70.     In addition, Plaintiff and the class members are entitled to an award of attorney's fees and costs pursuant to § 627.428 Fla. Stat. and all other statutory or contractual provisions allowing for attorney's fees and costs.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the putative Class, demands relief and judgment as follows:

1.     For an Order certifying this action as a Class Action on behalf of the Class described above;

2.     For an award of compensatory damages for the Class in amounts owed by Defendant;

3.     For all other damages according to proof;

4.     For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including § 627.428 Fla. Stat.;

5.      For costs of suit incurred herein;

6.      For pre- and post-judgment interests on any amounts awarded; and

7.      For other and further forms of relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.


Respectfully submitted,

By: */s/ Scott Edelsberg*
**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
scott@edelsberglaw.com
Jordan D. Utanski, Esq.
Florida Bar. No. 119432
utanski@edelsberglaw.com
19495 Biscayne Blvd. #607
Aventura, FL 33180
Telephone: (305) 975-3320


**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis
Florida Bar No. 101754
ashamis@shamisgentile.com
Garrett O. Berg, Esq.
Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Ave., Suite 1205
Miami, FL 33132
Telephone (305) 479-2299
Facsimile (786) 623-0915


**DAPEER LAW, P.A.**
Rachel Dapeer, Esq.
Florida Bar No. 108039
rachel@dapeer.com
300 S. Biscayne Blvd, #2704
Miami, FL 33131
Telephone: 305-610-5223