UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LESSIE GLOVER, individually and
on behalf of all others similarly situated,

     Plaintiff,

v.

LM GENERAL INSURANCE COMPANY,
a Massachusetts Corporation,

     Defendant.

_____/

Case No. 19-21900-CIV-ALTONAGA

CLASS ACTION

_____

**PLAINTIFF'S AMENDED[i] MOTION FOR CLASS
CERTIFICATION AND INCORPORATED MEMORANDUM
OF LAW**

_____

---

[i] Amended per the Court's Order [DE #64]

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND .............................................................................. 1

III. PROPOSED CLASS ........................................................................................... 3

IV.  MEMORANDUM ............................................................................................... 4

   A.   The Class Certification Threshold Requirements are Satisfied ......................... 4

      i.   Plaintiff Possesses Standing to Assert the Claim .................................. 4

      ii.  The Class Is Adequately Defined and Ascertainable ........................... 5

   B.   The Proposed Class Satisfies the Rule 23(a) Requirements ............................ 8

      i.   The Class Is Sufficiently Numerous ...................................................... 8

      ii.  There Are Questions of Law and Fact Common to the Class ............... 9

      iii. Plaintiff's Claim is Typical of the Class' Claim ................................. 10

      iv.  Plaintiff and Her Counsel Are Adequate Class Representatives ......... 11

   C.   Class Treatment is Appropriate Pursuant to Rule 23(b) ................................ 12

      i.   Common Issues Predominate Over Any Individual Issues .................. 12

      ii.  Class Treatment Is a Superior Method of Adjudication ...................... 14

         1.   Class Member Interests Are Supported by Class Treatment ....................... 15

         2.   No Other Litigation Precludes Class Treatment ......................................... 16

         3.   It Is Desirable to Concentrate Litigation in This Forum ............................ 16

         4.   Class Treatment is Manageable .................................................................. 17

V.   NOTICE .............................................................................................................. 17

VI.  CONCLUSION .................................................................................................. 18

## I.      <u>INTRODUCTION</u>

Plaintiff Leslie Glover ("Plaintiff" or "Ms. Glover") files this Amended Motion for Class Certification and seeks an order certifying the proposed Class as defined herein, pursuant to Federal Rule of Civil Procedure 23. As set forth herein, all preconditions for class certification set forth in Rule 23(a) are satisfied, and class treatment is viable through Rule 23(b). *See* Fed. R. Civ. P. 23(a) (numerosity, commonality, typicality, and adequacy); (b)(3) (predominance and superiority).

It is difficult to conceive of a case more suitable for class treatment. This case is a simple and straightforward breach of contract – Defendant LM General Insurance Company ("Defendant" or "LM General") promised to pay its insureds the actual cash value ("ACV") of their vehicles in the event of a total loss. The ACV of a vehicle includes costs necessary to replace the vehicle, including title transfer fees and registration transfer fees ("Transfer Fees"), which are mandatory fees imposed by the State of Florida at a flat rate. All class members insured their vehicles through a uniform and materially identical policy form (the "Policy") – questions related to both liability and damages are not only common, they are identical. Because the Policy, laws, damages, and obligations in this litigation are identical for all class members, resolution of Plaintiff's claim will resolve the claims of all members of the proposed Class in a single stroke. Plaintiff respectfully submits this case is quintessentially suitable for class treatment, and requests this Court enter an Order certifying the Class as defined herein, appointing Ms. Glover as Class Representative and the undersigned as Class Counsel, and directing the parties to submit a proposed Notice plan under Fed. R. Civ. P. 23(c).

## II.      <u>FACTUAL BACKGROUND</u>

Defendant provides comprehensive and collision private-passenger auto coverage for property damage to insureds in Florida. *See* Plaintiff's Amended Class Action Complaint [ECF 11] ("Amended Complaint") at ¶ 1. As outlined in the Amended Complaint, Defendant systematically underpaid not just Plaintiff but thousands of other putative Class Members amounts Defendant owed its insureds. *Id.* at ¶ 2.

Plaintiff's insurance policy (<u>Exhibit A</u> to the Amended Complaint), under the section entitled "Coverage for Damage to Your Auto", states that Defendant will pay for direct and accidental loss to a covered vehicle. *Id.* at ¶ 33. In the same section, under a provision entitled

1

"Limits of Liability," Defendant states that the limit of liability for loss is the Actual Cash Value ("ACV") of the damaged property. *Id.* at ¶ 35.

ACV is not defined in the Policy. *Id.* at ¶ 36. Clearly, then, the policy language does not exclude: (1) vehicle title and registration fees from ACV; or (2) any provision deferring or conditioning payment of vehicle title and registration fees for any purpose whatsoever. *Id.* at ¶ 38. Although Plaintiff possessed coverage under the standard uniform policy and policy provisions for comprehensive and collision coverage, Plaintiff and all other insureds similarly situated with total loss claims under identical coverage provisions and policies were systematically underpaid for these claims. *Id.* at ¶16.

Moreover, facts elicited through the discovery process demonstrate that Defendant essentially concedes Plaintiff's allegations. ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████ *See* Deposition Transcript of LM General's Corporate Representative Mark Robitaille, dated September 20, 2019 ("Robitaille Depo."), attached as **Exhibit A**, at 38:2-22.[1] ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

*Id.* at 58:23-59:23, 63:18-24, 65:23-66:3, 94:6-23. ██████████████████████████████

██████████████████████████████████████████ *Id.* at 37:8-38:10 ████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████. *See* Deposition Transcript of LM General's Corporate Representative Gabriel Jeffrey, dated September 20, 2019 ("Jeffrey Depo."), attached as **Exhibit B**, at 22:2-14. ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████ *Id.* at 22:2-23:19 █████████████████████████████

████████████████████████████████████████████; Couch Decl. (**Exhibit C**) (spreadsheet data produced shows over 5,000 insureds were not paid Transfer Fees).

---

[1] ████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

As Plaintiff's expert makes clear, Transfer Fees necessary to replace the vehicle are imposed at set rates that have not changed at any point during the relevant time period. *See* Expert Report of Karen Matera Regarding Class Data ("Matera Report") at 3-4, attached as **Exhibit D.** Florida law requires every vehicle to be legally titled. *See* § 319.21(3) Fla. Stat. (2019). A person does not acquire marketable title or otherwise own the vehicle at all unless he or she transfers title to their name, nor can they even legally operate the vehicle. *See* § 319.22 Fla. Stat. (2019). To transfer title – and thus comply with such requirements – insureds must pay a fee. Such fee is derived from several component parts and amounts to $75.25. *See* Matera Report at 9.[2] Additionally, Florida law requires every vehicle to be legally registered. *See* § 320.02(1) Fla. Stat. (2019). As with the title requirement, an insured cannot  legally operate the vehicle until he or she complies with the statutory requirement. *See* Matera Report at 14. To register the vehicle, an insured must pay at minimum the registration transfer fee of $4.60, which is also derived from several component parts. *See* Matera Report at 13.

Thus, the aforementioned fees, at minimum, are necessary replacement costs – and thus part of the ACV of an insured vehicle – and apply equally to all members of the proposed Class.

### III.    PROPOSED CLASS

Plaintiff seeks to certify the class, defined as follows:

> All insureds, under a private-passenger property damage Florida auto policy issued by LM General, who made a first-party claim for property damage that was determined to be a covered total-loss and where the total-loss claim payment did not include an amount for Transfer Fees, from May 10, 2014 until the date of any certification order.

The proposed class differs from the class definition proposed in the Amended Complaint in several ways. First, there are minor (but non-substantive) changes to the language merely to add clarity. Second, the class proposed herein is limited to LM General insureds to comport with this Court's Order dismissing Liberty Mutual Insurance Company from the case. *See* Doc. 61. Third, the class proposed herein is limited to insureds who did not receive Transfer Fees as a part of the

---

[2] There are other fees which are optional or non-mandatory – for example, consumers can pay additional fees for specialty plates or duplicate copies or to record a lien. *Id.* Plaintiff does not believe insurers are liable for such optional fees and thus does not seek such fees as damages in this action; instead, Plaintiff seeks fee amounts necessary to replace the vehicle, for which Plaintiff alleges Defendant is liable.

total-loss payment, given that LM General changed its practices during the relevant time-period and began including Transfer Fees in total-loss payments so that insureds who already received the relief sought are not included as class members. *See Tillman v. Ally Fin. Inc.*, 2017 U.S. Dist. LEXIS 216694, at *4, fn. 3 (M.D. Fla. Sep. 29, 2017) (class definitions narrower than as proposed in complaint are "generally allowable"); *Bouton v. Ocean Props., Ltd.*, 322 F.R.D. 683, 693 (S.D. Fla. 2017) (class definition may be narrowed, but not broadened, without amending the pleadings).

## IV.    MEMORANDUM

A district court has broad discretion in determining class certification. *See, e.g.*, *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). To certify a class, the named plaintiff must have standing, all Rule 23(a) requirements must be satisfied, and at least one Rule 23(b) must be satisfied. *See, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009); *see* Fed. R. Civ. P. 23(a) and (b). Courts should analyze the merits of the pleadings to the extent necessary to determine whether the Rule 23 requirements are satisfied. *See, e.g.*, *Ohio State Troopers Ass'n v. Point Blank Enters.*, 347 F. Supp. 3d 1207, 1218 (S.D. Fla. 2018). Rule 23 does not grant "courts 'license to engage in free-ranging merits inquiries at the certification stage.'" *Cox v. Cmty. Loans of Am. Inc.*, 625 Fed. Appx. 453, 455 (11th Cir. 2015) (*quoting Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013)).

### A.    The Class Certification Threshold Requirements are Satisfied

To certify a case for class treatment, courts must first find two threshold requirements are met: first, that the proposed representative possesses standing to assert each claim, and second, that the class is adequately defined and ascertainable.

#### i.    Plaintiff Possesses Standing to Assert the Claim

The first threshold question is whether the named plaintiff possesses Article III standing to press each claim alleged on behalf of the class. *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1986) ("Any analysis of class certification must begin with the issue of standing."). Because this case involves only a single-count breach of contract, the inquiry is merely whether Plaintiff possesses standing to litigate the alleged breach of contract. *See J W v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1272 (11th Cir. 2018) (that a suit is brought as a class action "adds nothing to the question of standing").

To satisfy Article III, a plaintiff must allege an injury-in-fact, fairly traceable to the defendant's conduct, and subject to redress by a favorable judicial decision. *Miccosukee Tribe of*

4

*Indians v. Florida State Athletic Comm'n*, 226 F.3d 1226, 1228 (11th Cir. 2000) (setting forth the three-part test for constitutional standing). Here, there is no question Plaintiff possesses standing to bring the breach of contract claim – indeed, this Court already held Plaintiff plausible alleged a valid cause of action, which was an implicit (at least) finding that Plaintiff possesses Article III standing. *See* Doc. 61 (Order on Motion to Dismiss) at 16 (holding Plaintiff plausible alleged a valid claim for breach of contract for failure to pay Transfer Fees). For a breach of contract claim, "Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile U.S.A., Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). By plausibly alleging Defendant breached its contract by failing to pay the full ACV of her insured vehicle, thereby damaging her in the amount of at least $79.85, Plaintiff established Article III standing. *See Venerus v. Avis Budget Car Rental, LLC*, 723 Fed. Appx. 807, 813-14 (11th Cir. 2018).

   ii.   The Class Is Adequately Defined and Ascertainable

Before embarking on the Rule 23 analysis, the plaintiff must first show the class is adequately defined and clearly ascertainable. Although the Eleventh Circuit has not yet confirmed the standard for ascertainability in this Circuit,[3] Plaintiff easily satisfies the standard articulated in

---

[3] In *Ocwen Loan Services, LLC v. Belcher*, No. 18-90011, 2018 WL 3198552, at *3 (11th Cir. June 29, 2018), the Eleventh Circuit noted that there is a circuit split as to whether "a plaintiff must demonstrate an 'administratively feasible' method for determining class membership over and above Rule 23's requirements," and the Eleventh Circuit "has yet to address this split in a published opinion." For purposes of this Motion, Plaintiff assumes the heightened standard applies. However, Plaintiff does not concede it *should* apply as a matter of course and believes it is an atextual requirement imposed as a matter of public policy and is better analyzed within the framework of the actual textual requirements rather than as a freestanding precondition. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015) ("The policy concerns motivating the heightened ascertainability requirement are better addressed by applying carefully the explicit requirements of Rule 23(a) and especially (b)(3)."). If Rule 23 should include a freestanding administrative feasibility requirement, then it is for Congress to add it. If the text of Rule 23 *already* includes an administrative feasibility requirement, then surely it is located in the actual text, not a judicially-created *threshold* requirement. The fact that courts explain the administrative feasibility analysis must occur *prior* to the textual analysis is a concession that the requirement cannot be located in the text. *See, e.g.*, *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 685 (S.D. Fla. 2014) ("The district court must be satisfied that this requirement can be met even before delving into the rigorous analysis of the Rule 23 elements."). Plaintiff respectfully submits that if Congress intended to require administrative feasibility, it could have required administrative feasibility, and still could add the requirement requirement, should it so choose; courts, on the

recent unpublished opinions. "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed. Appx. 782, 787 (11th Cir. 2014) (quotations omitted). These objective criteria should "allow for class members to be identified in an administratively feasible way." *Karhu v. Vital Pharmaceuticals, Inc.*, 621 Fed. Appx. 945, 946 (11th Cir. 2015).

Ascertainability is a preliminary inquiry by the Court to consider whether there is a means of later identifying class members before embarking on an analysis of the Rule 23 requirements for class certification. *See Little v. T-Mobile, USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Consideration of ascertainability "better prepares a district court to 'direct to class members the best notice that is practicable under the circumstances.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 165 (3d Cir. 2015) (*quoting* Fed. R. Civ. P. 23(c)(2)(B) (noting Rule 23(c)(2)(B) provides notice should be directed "to all class members who can be identified through reasonable effort") (emphasis added)). Because ascertainability is designed simply to aid the district court in determining whether the best notice practicable is directed to class members, ascertainability is a "narrow inquiry" and is not commingled with Rule 23 requirements. *Reyes v. BCA Fin. Servs.*, 2018 U.S. Dist. LEXIS 106449, at *28-30 (S.D. Fla. Jun. 26, 2018).

Here, there is no question the class is ascertainable. ███████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████.[4] Not only are Defendant's records useful for purposes of identification, they are based on objective definition criteria – the factors are based on objective criteria (when the accident occurred, whether it was determined to be a total-loss, whether payment for Transfer Fees was provided) and not on subjective criteria, such as state of mind. *Compare, e.g.*, *Bussey*, 562 F. App'x at 787 ("An identifiable class exists if its members can be ascertained by reference to objective criteria."), *and*

---

other hand, should "apply, not amend, the work of the People's representatives." *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1726 (2017).

███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████

*Cox v. Porsche Fin. Servs.*, 330 F.R.D. 322, 331 (S.D. Fla. 2018) (payment data is objective criteria), *and Dear v. Q Club Hotel, LLC*, 2016 U.S. Dist. LEXIS 180873, at *5 (S.D. Fla. Dec. 8, 2016) (the dates on which relevant incidents occurred is objective criteria), *and Thompson v. Jackson*, 2018 U.S. Dist. LEXIS 194773, at *18 (N.D. Ga. Nov, 15, 2018) (same), *with Simer v. Rios*, 661 F.2d 655, 659 (7th Cir. 1981) (class members could not be identified absent the "Sisyphean task" of deciphering their state of mind). Class membership is not only based on objective criteria, it is determined by objective evidence Defendant itself possesses; thus, class membership can be reliably proven and is not dependent on the "say-so" of putative class members. *See Karhu*, 621 Fed. Appx. at 948 (justifying imposition of administrative feasibility requirement because forcing defendants to accept assertion without evidence of membership would implicate due-process protections); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("Ascertainability provides due process by requiring that a defendant be able to test the reliability of the evidence submitted to prove class membership."). Here, class membership is proven by objective evidence, and therefore evidence that can be tested – namely, documents demonstrating the claim dates, whether the class member was insured at the time of accident, whether Defendant determined the claim to be a total loss, and whether the claim payment included Transfer Fees amounts – and thus the ascertainability requirement is clearly satisfied.

Moreover, the class is adequately defined. *See Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) (class definition should not be overly broad, amorphous, or vague). The class is defined to only include those who were not paid Transfer Fees, and thus suffered the harm alleged in the complaint, thereby excluding anyone already provided amounts Plaintiff claims as damages; thus, the class is not overbroad. *See Almonor v. Bankatlantic Bancorp, Inc.*, 261 F.R.D. 672, 676 (S.D. Fla. 2009) (a class that includes members who could not have suffered the harm alleged by the complaint is overbroad); *Terrill v. Electrolux Home Prods.*, 295 F.R.D. 671, 684 (S.D. Ga. 2013) (class definition tailored to include those who suffered harm as alleged in complaint is not overbroad) *rev'd on other grounds* 2016 U.S. App. LEXIS 5112 (11th Cir. Mar. 21, 2016).  On the other hand, the class is not failsafe, because class membership is not defined by reference to the merits of the claim – failure to pay Transfer Fees may or may not constitute a breach, and class membership is not defined such that membership depends on whether a breach occurred. *See Alhassid v. Bank of Am.*, N.A., 307 F.R.D. 684, 694 (S.D. Fla. 2015) (A fail-safe class is one whose definition incorporates the elements of a successful legal claim, such that

determining whether an individual or entity is a member of the class "front-ends a merits determination on [the defendant's] liability."). Finally, it is clear who is and is not a member of the class – thus, the class definition is not vague or amorphous. *See, e.g.*, *Teahl v. Lazy Flamingo, Inc.*, 2015 U.S. Dist. LEXIS 4444, at *5-7 (M.D. Fla. Jan. 13, 2015) (class definition is too vague if it is difficult to know whether someone is a member of the class or is difficult to apply) 2016 U.S. Dist. LEXIS 99440, at *15-16 (M.D. Fla. Jun. 21, 2016) (vagueness problem was eliminated and class certified because the class definition made clear who qualified as a class member and was not difficult to apply).

Thus, the threshold requirement that the class be adequately defined and clearly ascertainable is satisfied here.

**B. The Proposed Class Satisfies the Rule 23(a) Requirements**

"Once a court has considered whether the named class representatives have standing to assert claims on behalf of the class, the analysis shifts to the requirements of Fed. R. Civ. P. 23." *United Wis. Servs. v. Abbott Labs. (In re Terazosin Hydrochloride Antitrust Litig.)*, 220 F.R.D. 672, 684 (S.D. Fla. 2004). First, a plaintiff must satisfy the requirements of Rule 23: numerosity, commonality, typicality, and adequacy. *Id.*

    i.   <u>The Class Is Sufficiently Numerous</u>

The purpose of the numerosity inquiry is not whether the number of proposed class members is "too few," but rather "whether joinder of proposed class members is impractical." *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000); see also Fed. R. Civ. P. 23(a)(1).

The Eleventh Circuit has held that "'[g]enerally, less than twenty-one is inadequate, more than forty adequate.'" *Cheny v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (*quoting Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). Here, insureds whose claims were determined to be covered total-loss and who received a total-loss payment that did not include Transfer Fees during the relevant time-period are class members; because the amount of qualifying insureds is determined by existing, objective evidence, numerosity can be conclusively determined, and not merely reasonably estimated. *See Brink v. Raymond James & Assocs., Inc.*, 328 F.R.D. 437, 444-45 (S.D. Fla. 2018) (precise definition allows numerosity to be established

because data can show putative class members matching class definition). Data produced by Defendant shows that there are over 5,000 class members of the proposed Class. Exh. C (Couch Decl.). The numerosity requirement is easily satisfied.

      ii.    <u>There Are Questions of Law and Fact Common to the Class</u>

"Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Satisfying the commonality requirement is a "low hurdle" under Rule 23(a)(2). *Id*. at 1356. "[F]actual differences may exist between class members' claims without defeating certification, provided common questions of law exist." *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 321 F.R.D. 677, 685–86 (M.D. Fla. 2017). "This part of the rule does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotations and citations omitted).

Commonality is satisfied in this case because there are questions of law common to the class as to whether Defendant breached the form insurance Policies by failing to pay title or tag transfer fees on Florida first-party total loss claims, and there is a common answer to this question in interpreting the uniform policy language across the entire putative class. The contract alleged to have been breached is the same as to all class members and the conduct alleged to constitute the breach is the same as to all class members. Amended Complaint at ¶ 46. Defendant confirmed that the Policy language at issue is the same for all Class members. Exh. A at 58:23-59:23, 63:18-24, 65:23-66:3, 94:6-23. This litigation revolves around whether said Policy language requires payment of Transfer Fees. Doc. 61 (Order on Motion to Dismiss) at pgs. 1-2 ("Plaintiff alleges Defendants have a practice of refusing to pay full Actual Cash Value ("ACV"), including state and local title transfer and vehicle registration fees, to first-party total loss insureds[.]"), pg. 5 ("Defendants first argue the Court should dismiss the Amended Complaint's single breach-of-contract claim because an insurer is not required to pay title and tag transfer fees as part of the actual cash value of a total loss of a motor vehicle."). There are over 5,000 insureds who, like Plaintiff, were not paid Transfer Fees as a part of their original ACV payment. Exh. C (Couch Decl.). Resolution of that common issue – whether Defendant's failure to include transfer fees in making ACV payments to total loss insureds constitutes a breach of contract – is the crux of this case, and is "one issue whose resolution will affect all or a significant number of the putative class

members." *Williams*, 568 F.3d at 1355; *see also, e.g.*, *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004) (The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members."). Even were this the only common question, it would satisfy the commonality requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do[.]") (quotation omitted).

Moreover, this same common issue was easily found to satisfy the Rule 23(a)(2) requirement in virtually identical total-loss class actions. *See Jones v. Gov't Emples. Ins. Co.*, 2019 U.S. Dist. LEXIS 58201, at *11 (M.D. Fla. Apr. 4, 2019) ("The question of whether GEICO breached its contractual obligations to insureds by not paying title or tag transfer fees is common to all putative class members and 'capable of classwide resolution.'") (citation omitted); *Sos v. State Farm Mut. Auto. Ins. Co.*, 2019 U.S. Dist. LEXIS 139680, at *10 (M.D. Fla. May 2, 2019) (same, including sales tax); *Roth v. GEICO Gen. Ins. Co.*, 2018 U.S. Dist. LEXIS 226658, at *9 (S.D. Fla. May 3, 2018) ("Plaintiff also posits that title transfer fees likewise apply equally across the class, and likewise present a common question of contract interpretation. The Court agrees that these issues are central to Defendant's liability, and resolution of these issues will affect all members of the putative class.").

### iii.   Plaintiff's Claim is Typical of the Class' Claim

"In order to demonstrate typicality, the plaintiff must generally demonstrate that a 'sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 321 F.R.D. 688, 698 (S.D. Fla. 2017) (citing *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001)); *see also* Fed. R. Civ. P. 23(a)(3). "Stated differently, '[t]he claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory.'" *Id*. (citing and quoting *Williams*, 568 F.3d at 1356-57).

Because Defendant's conduct was pursuant to a uniform practice of failing to include Transfer Fees in paying the ACV of total-loss vehicles, Plaintiff suffered the same harm and in the same manner—their identical policy language insurance contracts with Defendant were materially breached. *See Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) ("[T]ypicality measures whether a significant nexus exists between claims of the named representative and those of the

class at large."); *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 668 (S.D. Fla. 2010) (typicality met where class representative's claim was premised on the same injury as class members and subject to class-wide proof). Plaintiff was insured under a policy with the same terms as class members, and her claim is based on the same theory – that ACV includes costs necessary to replace the vehicle, including mandatory Transfer Fees – and is subject to the same defenses, meritorious or not, as the Class Members' claims. *Williams*, 568 F.3d at 1356-57. Moreover, the presence of a unique defense or factual circumstance does not preclude a finding of typicality unless it is likely to be central to the litigation. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class."). Here, there is no evidence of any unique claims or defenses, let alone ones precluding a finding of typicality.

As before, it is significant that courts have found in virtually identical class actions that the plaintiffs' claims were typical of class members' claims. *See Jones*, at *12 ("The named Plaintiffs' claims are typical of the putative class [because the] named Plaintiffs' claims involve the alleged breach of identical contractual provisions pursuant to GEICO's standard practice" of not include Transfer Fees in ACV payments); *Sos*, at *12 (typicality was met in claim against insurer for failure to include sales tax and Transfer Fees in ACV payment because "the putative class members' claims are approximately identical and proving the named Plaintiff's claim would necessarily prove claims classwide[.]"); *Roth*, at *10 (typicality satisfied because plaintiff was insured under identical policy terms, suffered the same injury, and based her claim on the same theories of liability as the class). Typicality is similarly satisfied here.

    iv.   <u>Plaintiff and Her Counsel Are Adequate Class Representatives</u>

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Fulfilling this requirement mandates that: (i) the class representative possesses no interests antagonistic to the class, and (ii) class counsel is competent. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).

Plaintiff is committed to protecting the interests of the class by prosecuting the action. *See* Deposition Transcript of Plaintiff Lessie Glover, dated September 27, 2019 ("Glover Depo."), attached as **Exhibit E**, at 44:11-22; *see Prindle v. Carrington Mortg. Servs.*, LLC, 2016 U.S. Dist.

11

LEXIS 112881, at *19-20 (M.D. Fla. Aug. 24, 2016) (adequacy requires lack of conflict of interest and adequate prosecution). There is no suggestion any conflict of interests exists, and there is no threat that action in this litigation could benefit some class members while harming others – either class members (none of whom were paid Transfer Fees) are owed Transfer Fees or not, but resolution of the question impacts Plaintiff and all class members the same. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (a conflict precluding class representation addresses situations where "some party members claim to have been harmed by the same conduct that benefitted other members of the class."

Moreover, class counsel is experienced in litigating class actions and other complex litigation, including successfully litigating class actions with substantially similar issues. Exh. F (Phillips Decl.). Further, class counsel possess the resources to litigate the claim. *Id.* Thus, Plaintiff and class counsel will protect the interests of the class and adequately prosecute the claim.

**C. Class Treatment is Appropriate Pursuant to Rule 23(b)**

Having established the Rule 23(a) prerequisites are met, Plaintiff seeks to certify the class pursuant to Rule 23(b)(3), which permits class treatment where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

    i.   Common Issues Predominate Over Any Individual Issues

"Determining whether common questions of law or fact predominate over questions affecting only individual members . . . requires a showing that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof.'" *Bowe v. Pub. Storage*, 318 F.R.D. 160, 176 (S.D. Fla. 2015) (quoting *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997)). A complete absence of individual issues is not necessary. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986). A plaintiff merely must demonstrate that issues which are subject to generalized proof predominate over issues that require individualized proof. *See, e.g. Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) ("it is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions"); *Rosen*, 270 F.R.D. at 681 (citing *Kerr v. City of W. Palm*

12

*Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) ("Issues that are subject to generalized proof and applicable to the whole class must predominate over the issues involving individualized proof.")).

Notably, courts routinely find predominance in cases involving the interpretation of uniform material insurance provisions. *See, e.g.*, *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 675 (S.D. Fla. 1997) ("A legal determination as to whether the [auto] policy in question covers claimants in this factual situation is the predominant question of interest among the class members."); *Powers v. Govt. Employees Ins. Co.*, 192 F.R.D. 313, 318 (S.D. Fla. 1998) (common issues predominated for a state class involving an insurer's breach of its policies by recovering under subrogation claims).[5]

Here, questions of law or fact common to class members predominate over any questions affecting only individual members. The predominate issue, common to all class members, is whether Defendant breached the Policy by failing to properly compensate its insureds. Every class member was insured by Defendant under identical material policy terms. Exh. A at 58:23-59:23, 63:18-24, 65:23-66:3, 94:6-23. Defendant breached the Policy in precisely the same way – by failing to pay Transfer Fees on total loss claims – as to over 5,000 insureds. *Id*. at 37:8-38:10 (Defendant did not pay Transfer Fees until a change in business practice in 2017); Exh. C (Couch Decl.). The damages will be determined based on the flat rate imposed by the State of Florida, which is unchanged throughout the class period. *See* Matera Report at 4 (title fees are the minimum flat fees mandated and do not require formulaic calculation); *see also Jones v. Gov't Emples. Ins. Co.*, 2019 U.S. Dist. LEXIS 120353 (Jul. 19, 2019) (granting summary judgment in favor of certified class of total-loss insureds not paid Transfer Fees in original ACV payment and awarding damages of $79.35 to every class member). But even if damages raise some individualized issues, such a finding would not defeat class certification. *Brown v. Electrolux Home Products, Inc.*, 817 F. 3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'") (*citing* Newberg on Class Actions).

---

[5] In fact, as one court pointed out (in a non-insurance case), "claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such." *Kleiner v. First Nat'l Bank*, 97 F.R.D. 683, 692 (N.D. Ga. 1983).

Frankly, not only do common questions predominate over individual questions, it is difficult to conceive of any material individual questions at all. For this reason, in *Jones*, which concerned a virtually identical claim – failure to pay the same Transfer Fees in making ACV payment to total-loss insureds – the court found that "[p]redominance is easily met." 2019 U.S. Dist. LEXIS 58201, at \*17; *see also Roth*, at \*13-14 (noting that "[i]nterpretation of uniform material insurance provisions that will determine liability is particularly indicative of predominance" and holding the "common legal and factual issues identified in this case" addressing underpayment of ACV to total-loss insureds significantly outweighed any individual questions). The entire litigation revolves around whether Defendant owed Transfer Fees to insureds who suffered a total-loss; the answer to that question will resolve essentially the entire litigation as to both liability and damages. Moreover, entitlement to ACV does not requiring incurring costs. *See, e.g.*, *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305 (11th Cir. 2004) (ACV policy does not require insureds to incur costs before being entitled to payment of ACV); *Parkway Assocs., LLC v. Harleysville Mut. Ins. Co.*, 129 Fed. Appx. 955, 962-63 (6th Cir. 2005) ("Indeed, even if Parkway chooses not to repair its property at all, it would still be entitled to what it bargained for: the actual cash value of its loss[.]"); *Bastian v. United Servs. Auto. Ass'n*, 137 F. Supp. 3d 1272, 1278 (M.D. Fla. 2015) (ACV entitled insureds to replacement costs "regardless of whether that amount is actually incurred."); *Roth v. GEICO Gen. Ins. Co.*, 2018 U.S. Dist. LEXIS 226554, at \*9 (Jun. 13, 2018) (plaintiff was entitled to full ACV even if she never replaced the vehicle at all). Evidence of whether a class member replaced their vehicle and incurred costs would be irrelevant and is not at issue in this litigation.

Thus, resolution of the claim is subject to common proof. *See Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir.1989) (common issues predominate where they are subject to generalized proof). As in *Jones* and other similar total-loss litigation, predominance is easily met here.

### ii. Class Treatment Is a Superior Method of Adjudication

Rule 23(b)(3) also requires that class treatment be superior to alternative methods of litigation. The focus "is not on the convenience or burden of a class action suit *per se*, but on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay*, 382 F.3d at 1269 (citing *In re Managed Care Litig.*, 209 F.R.D. 678, 692 (S.D. Fla. 2002) (noting that this factor "requires the Court to determine

14

whether there is a better method of handling the controversy other than through the class action mechanism")). Generally, where common issues predominate, class treatment is superior because "the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims." *Id*.

"To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of the litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 685, 695 (S.D. Fla. 2008); *see also City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 657 (S.D. Fla. 2010). Each of these factors supports the superiority of class certification here.

### 1.    Class Member Interests Are Supported by Class Treatment

The average claim of each class member is approximately $79.85, which is relatively small when compared to the cost of litigating a breach of contract case against a large insurance company. *See* Matera Report at 13-14.; *see also Leszczynski*, 176 F.R.D. at 676 ("Class actions are particularly appropriate, where… multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs."); *Dickens v. GC Servs. Ltd. P'ship*, 706 Fed. Appx. 529, 538 (11th Cir. 2017) (reversing denial of class certification because, *inter alia*, district court failed to consider that "low per-class-member recovery militates in favor of class adjudication."). The fact that individual recovery is so low is virtually dispositive on this question. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("While the text of Rule 23(b)(3) does not exclude from certification cases in which individual damages run high, the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."); *Phillips Petro. Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that the class action mechanism may empower "plaintiffs to pool claims which would be uneconomical to litigate individually," such as when most of them "would have no realistic day in court if a class action were not available."). The Southern District has made clear that where the potential recovery is relatively small, as here, the inevitable conclusion is that class members cannot have an interest in individual prosecution of

15

claim for which the recover would not justify such prosecution. *See In re Checking Account Overdraft Litig.*, 307 F.R.D. 656, 678 (S.D. Fla. 2015) ("Nearly all of the Class members in these actions have claims that are so small that it would cost them much more to litigate individually than they could ever hope to recover in damages, and thus there is no reason to believe that the Class members have any particular interest in controlling their own litigation."). This factor clearly counsels in favor of class treatment.

2.    *No Other Litigation Precludes Class Treatment*

Plaintiffs are unaware of any other putative class member filing a lawsuit asserting the same claims as asserted in this lawsuit. This factor favors class certification. *Klay*, 382 F.3d at 1269 (fact that other class members hadn't filed similar litigation meant second factor favored finding of superiority).

3.    *It Is Desirable to Concentrate Litigation in This Forum*

The Southern District of Florida is well equipped to handle insurance class actions such as this. Moreover, all potential class members currently reside or did reside in Florida during the class period, and all relevant transactions occurred in Florida. *See Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 522 (S.D. Fla. 2013) (finding that because all subject "transactions occurred in Florida, litigating this case in a Florida federal district court makes sense.").

Moreover, class treatment would conserve judicial resources and offers "substantial economies of time, effort and expense" for the parties. *Klay*, 382 F.3d at 1280; *see also, e.g.*, *Upshaw v. Ga. Catalog Sales, Inc.*, 206 F.R.D. 694, 701 (M.D. Ga. 2002) ("Even if sufficient incentive existed for individual claimants to pursue their claims separately, class action treatment is far superior to having the same claims litigated repeatedly, wasting valuable judicial resources."). Because the case is subject to generalized proof and common issues of liability and damages, it makes little sense to require individual class members to litigate the same issue over and over again, even if they were inclined to do so for $79.85. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Moreover, this court already issued a critical ruling on a Rule 12(b)(6) motion, which impacts the analysis and favors concentrating the litigation in this forum. *Klay*, 382 F.3d at 1271 ("it is desirable to concentrate claims in a particular forum when that forum has already handled several preliminary matters."). This factor also indicates class treatment is superior.

16

#### 4.    *Class Treatment is Manageable*

As an initial matter, manageability will rarely suffice to preclude class treatment. *Klay*, 382 F.3d at 1272 (manageability "will rarely, if ever, be in itself sufficient to prevent certification of a class."). Moreover, the crux of this case is the uniform policy provision in question. Damages will be determined by simple formula. On this record, the case is not merely manageable as a class, it is ideal for class treatment. *Cty. of Monroe, Fla. v. Priceline.com, Inc.*, 265 F.R.D. 659, 672 (S.D. Fla. 2010) ("Given the number of issues subject to class-wide proof, there will be no unique difficulties in managing this case as a class action, beyond those inherent in complex cases.").

Frankly, there are little manageability problems at all – certainly, they do not preclude class treatment. The case concerns pure policy interpretation, and liability will almost certainly be determined at summary judgment. Damages are a ministerial application of fee amounts imposed by the State of Florida (and not subject to individualized proof). *Steen v. Capital One (In re Checking Account Overdraft Litig.)*, 2012 U.S. Dist. LEXIS 200108, at *82 (S.D. Fla. Jul. 19, 2012) (because damages were a ministerial application, class treatment was manageable and superior). Moreover, as discussed above, Defendant possesses records of all class members' identities and records, including whether they were paid Transfer Fees. *Martinez v. Wells Fargo Bank, N.A. (In re Checking Account Overdraft Litig.)*, 307 F.R.D. 630, 650 (S.D. Fla. 2015) (the fact that defendant possessed record of putative class members favored finding of manageability). This case is ideal for class treatment precisely because it will be easily managed.

### V.    <u>NOTICE</u>

In (b)(3) class actions, Rule 23 requires the "best notice that is practical under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). In this case, the putative class members were all LM General insureds and and thus LM possesses extensive personal identifiers, including current addresses, for many class members. Courts routinely find notice by mail to be appropriate. *See, e.g.*, *Allapattah Servs. v. Exxon Corp.*, 2006 U.S. Dist. LEXIS 88829 (S.D. Fla. 2006). Further, to the extent there exists other means to contact class members, such as email, such methods can be used as a back-up option to further ensure putative members are noticed. *See, e.g.*, *Guy v. Casal Inst. of Nev., LLC*, 2014 U.S. Dist. LEXIS 65056 at *7 (D. Nev. May 12, 2014) (permitting notice in a class action to be sent by email and/or U.S. Mail); *In re Sony Corp. SXRD Rear Projection*

17

*Telev. Mktg, Sales Practices & Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 49565 at *5 (S.D.N.Y. May 19, 2010).

Concerning more detailed questions concerning the form of the notice to be sent, development of a website, opt-outs, etc., Plaintiff submits that the Parties can collaborate to develop a joint notice plan to submit to the Court for approval should this Court certify the Class.

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectively requests the Court grant class certification pursuant to Fed. R. Civ. P. 23.

Dated: October 16, 2019

By:    */s/ Jacob Phillips*
Jacob L. Phillips
Florida Bar No.: 120130
Edmund A. Normand
Florida Bar No.: 865590
**NORMAND PLLC**
3165 McCrory Pl., Ste. 175
Orlando, FL 32803
Tel:  407-603-6031
Fax: 888-974-2175

Scott Edelsberg, Esq.
Florida Bar No.: 0100537
**EDELSBERG LAW, P.A.**
19495 Biscayne Blvd., No. 607
Aventura, FL 33180
Tel: 305-975-3320
scott@edelsberglaw.com

Andrew J. Shamis
Florida Bar No. 101754
Garrett O. Berg, Esq.
Florida Bar No. 1000427
**SHAMIS & GENTILE, P.A.**
14 NE 1st Ave., Ste. 1205
Miami, FL 33132
Tel:  305-479-2299
Fax: 786-623-0915
ashamis@shamisgentile.com
gberg@shamisgentile.com

18

Rachel Dapeer
Florida Bar No. 108039
**DAPEER LAW, P.A.**
300 S. Biscayne Blvd., No. 2704
Miami, FL 33131
Tel: 305-610-5223
rachel@dapeer.com
***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2019, the foregoing **Amended Motion for Class**

**Certification** was filed with the Clerk of the Court using the CM/ECF system, which will send

a Notice of Electronic Filing to all counsel or parties of record.

***/s/ Jacob Phillips***
Jacob L. Phillips

19